UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD A. BROWN,

        Petitioner,

                                            CASE NO. 1:08-cv-591

v.

                                            HON. ROBERT J. JONKER

RICK JANSEN,

       Respondent.

_____/

## ORDER AND JUDGMENT APPROVING REPORT AND RECOMMENDATION

The Court has reviewed the Magistrate Judge's Report and Recommendation (docket #10), and Petitioner's objection to it (docket #13). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

The Report and Recommendation recommends that Petitioner's habeas corpus petition be summarily dismissed for failure to raise a meritorious federal claim. Petitioner makes multiple

objections to the Report and Recommendation, but those objections merely restate his general argument or pertain to inconsequential details. Ultimately, none of the objections undermines the conclusion of the Magistrate Judge. After a de novo review of the record, the Court finds that Petitioner's habeas corpus petition is without merit, and the petition is summarily dismissed.

**I.      Background**

Petitioner currently is incarcerated in the Michigan Department of Corrections facility at Camp Branch. His original sentence of conviction arises out of his role in a 1992 armed robbery. Petitioner has been paroled on three separate occasions, but, on each occasion, he has had parole revoked for violating the terms or conditions of his release. His habeas petition challenges the Michigan Parole Board's decision to revoke his parole for the third time.

**II.     Petitioner's Due Process Claim**

Petitioner alleges that his substantive Due Process rights were violated in his December 2004 parole revocation hearing because (1) various police officers or probation officials lied under oath at the hearing; and (2) the hearing examiner doctored the audio tape and transcript of the hearing.

The parole revocation hearing examiner heard testimony from multiple witnesses. Petitioner, who was represented by counsel at the hearing, cross-examined those witnesses, called his own witnesses, and testified on his own behalf. Ultimately, the hearing examiner chose to credit the testimony of persons who Petitioner alleges were lying. The hearing examiner's credibility determinations are findings of fact that this Court must presume to be correct. *See* 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). Petitioner presents no evidence that the hearing examiner's decision to credit the testimony of these witnesses was "objectively unreasonable in light of the evidence presented." *See Thompkins v. Berghuis*, 547 F.3d

572, 586 (6th Cir. 2008); *see also* 28 U.S.C. § 2254(d)(2). Thus, Petitioner fails to satisfy his burden of showing by "clear and convincing evidence" that the factual findings of the parole hearing examiner should be set aside. *See Lancaster,* 324 F.3d at 429. Additionally, there is no evidence in the record to support Petitioner's allegations that the parole revocation hearing tapes and transcripts have been doctored. Petitioner's Due Process claim must be dismissed.

**III.    Petitioner's Ex Post Facto Claim**

Petitioner alleges the Michigan Parole Board violated the Ex Post Facto Clause of the United States Constitution by sentencing him to a sixty-month continuance for his parole violation. The gravamen of Petitioner's argument is that he would have received a lesser continued sentence but for the so-called "Zero Gun Tolerance Policy" announced by Governor Jennifer Granholm in July 2004, thirteen months after Petitioner was paroled for the third time, and three months before he was caught with a weapon, triggering his most recent parole revocation.[1]

The Ex Post Facto Clause prohibits enactments that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 504 (1995). In this case, the Magistrate Judge recommended dismissal of Petitioner's ex post facto claim in part because he found that the Zero Gun Tolerance Policy did not apply retroactively insofar as Governor Granholm announced the Policy before Petitioner was caught with a weapon. (Report and Recommendation, docket # 10, at 16-17.) This aspect of the Report and Recommendation is incorrect. Sanctions for violation of parole are part of the penalty of the initial offense of conviction. *See Johnson v. United States*, 529 U.S. 694, 700 (2000) (analyzing sanctions for violation of federal

---

[1] Petitioner challenges only the duration of his continued sentence; he does not challenge under the Ex Post Facto Clause the Parole Board's decision to revoke parole.

3

supervised release). Petitioner's initial offense of conviction predates the policy, thus application of that policy to him is technically "retroactive" within the meaning of the Ex Post Facto Clause, even though he actually had advance notice of it. *See id.* But just because a policy is technically "retroactive," does not mean it violates Petitioner's rights under the Ex Post Facto Clause. *Id.* at 699. Rather, Petitioner bears the burden of showing that the policy, as applied to him, created a "significant risk" that his actual length of incarceration would be greater than it was at the time he committed armed robbery in 1992. *Garner v. Jones*, 529 U.S. 244, 255 (2000); *see also Johnson*, 529 U.S. at 699. Because Petitioner cannot make this showing, his petition must be dismissed.

At first blush, it seems odd to apply ex post facto analysis to a parole decision that is by design and practice a quintessentially discretionary call. As long as the parole board's decision does not result in the offender serving more time than the maximum sentence permissible for his offense of conviction at the time of conviction, how is the quantum of potential punishment changed in any way that violates the reasonable expectations of the offender? *Garner*, 529 U.S. at 258 (Scalia, J. concurring) ("Any sensible application of the Ex Post Facto Clause. . . must draw a distinction between the penalty that a person can anticipate for the commission of a particular crime, and the opportunities for mercy or clemency that may go to the reduction of the penalty."). Indeed, in the analogous analytical context of a due process challenge to denial of parole, courts routinely articulate the rationale for rejecting the claim in precisely these terms. *See*, *e.g.*, *Sweeton v. Brown*, 27 F.3d 1162, 1164 -65 (6th Cir. 1994) (en banc) ("Michigan procedural limitations do not detract from the broad powers of the Michigan authorities to deny parole. So long as the parole discretion is broad, as in Michigan, the State has not created a constitutionally protected liberty interest by enacting procedural rules.") (internal footnotes and quotations omitted). There is a seeming inconsistency in

holding that the discretionary nature of Michigan's parole system prevents a prisoner from obtaining a liberty interest in early release but does not prevent the same prisoner from bringing an ex post facto challenge to the standards or procedures by which the parole board decides whether such early release is appropriate.[2] *Cf. Garner*, 529 U.S. at 258-59 (Scalia, J. concurring).

But notwithstanding these inconsistent strands of analysis, it is well established that retroactive changes to laws, rules, or policies governing parole may in certain circumstances violate the Ex Post Facto Clause, even if the actual custodial time served is within the statutorily allowed maximum sentence. *Garner*, 529 U.S. at 244. Analysis of ex post facto concerns is particularly difficult in the parole context because parole is built on the idea of discretion. *Id.*; *see also* M.C.L. §§ 791.234, 791.240a (outlining the discretion afforded the Michigan Parole Board); *Sweeton*, 27 F.3d at 1164 (discussing the Michigan Parole Board's "broad" discretionary powers). The very idea of discretion is that "it has the capacity, and the obligation, to change and adapt based on experience." *Garner*, 529 U.S. at 253. For the purposes of ex post facto analysis then, the Court must take into account the broad discretion afforded the Michigan Parole Board in applying the "significant risk" standard. *Id.* The operational question is whether the complained of change in the parole process was so fundamental and dramatic that there is now a significant risk not just of more time in custody, but so much more time that it was not within the offender's range of reasonable

---

[2] Courts have recognized a similar tension in attempting to apply ex post facto analysis to challenges to the United States Sentencing Guidelines. The Seventh Circuit has held that, because the Guidelines are now advisory only, retroactive application of a higher guideline range does not violate the Ex Post Facto Clause. *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006). Other courts have reached the opposite result. *See, eg., United States v. Turner*, 548 F.3d 1094 (D.C. Cir. 2008). The Sixth Circuit has assumed, without deciding, that a retroactive change to the Guidelines could potentially implicate the Ex Post Facto Clause. *See United States v. Duane*, 533 F.3d 441, 447 (6th Cir. 2008).

contemplation at the time of the offense, even considering the ebbs and flows of discretion and experience embedded in the parole system.

Petitioner cannot possibly make that showing in this case. Petitioner concedes that, under the terms of his parole, he was prohibited from possessing a weapon or associating with anyone who possesses a weapon. (*See* Petitioner's Objections, docket # 13, at 12.) Upon finding that a parolee has violated the terms of his or her parole, the parole board may send the parolee back to prison for any term up to the maximum term remaining on the original sentence. M.C.L. § 791.238; *McGruder v. Renico*, 58 Fed. Appx. 111, 112 (6th Cir. 2003). At the time he was caught with a weapon, Petitioner still had over seven years remaining on his sentence. Thus the parole board could have ordered a continuance in excess of the five years Petitioner actually received, particularly considering that Petitioner's initial offense of conviction also involved use of a weapon, and that he had repeatedly violated the terms of his parole. Petitioner's assertion that he would have received a lesser continuance but for the Zero Gun Tolerance Policy is pure speculation.[3] Petitioner presents no evidence that the policy limits in any way the Board's discretion to issue a lesser continuance. In fact, Petitioner provides no documentation of what the Zero Gun Tolerance Policy is, how it is

---

[3] Petitioner cites to the Parole Violation Hearing Transcript where the hearing examiner stated, "I have no choice, I have no discretion, the parole board, the governor has taken that discretion from [me]. If there's a violation that involves a firearm it's a mandatory sixty month return. Whether I like it or not it doesn't matter whether I have protested it or not, it doesn't matter. I voiced my opinion. They thanked me very much for my input and said this is the way it's gonna be. So I have absolutely no discretion." (Habeas Petition, docket # 1, Exhibit A, at 43.) Regardless of what the hearing examiner may have thought about the Zero Gun Tolerance Policy or how it might affect his discretion, the hearing examiner has no authority to order a continuance. The hearing examiner only recommends a continuance to the parole board. M.C.L. § 791.240a. The board alone has discretion over whether to grant, deny, or revoke parole. *Id.* Moreover, on this record, it is not even clear whether the hearing officer personally believed that the continuance should have been less than sixty months or more than sixty months.

applied, or how (if at all) it changed prior practice or policy. Petitioner's only cited authority for the policy is a January 2005 "Prisoner Pre-Release Notice" form stating:

> If you violate your parole granted by the Michigan Parole Board, by owning or possessing a firearm or imitation of a firearm or are in the company of anyone you know to possess these items, without prior permission from your agent, your parole will be revoked and you will serve an *additional* **60 months** in prison for the violation.

(Habeas Petition, docket # 1, Exhibit N) (emphasis in original). This general warning issued for the benefit of the parolee says nothing about the overall scope of the policy or how it is applied in practice. It is not law. It is not a regulation or rule. It is not an enactment in any legal sense. It is, however, unequivocal and unambiguous notice to this very Petitioner that he will receive no less than sixty months if he violates parole by possessing a weapon. He did so violate his parole, and he did receive the sixty month continuance. In the absence of any authoritative evidence of what the actual policy is or how it is applied in practice, Petitioner cannot maintain a claim under the Ex Post Facto Clause.[4]  *See Garner*, 529 U.S. at 255; *see also Morales* 514 U.S. 499.

On this record, Petitioner's ex post facto claim is nothing more than an unsupported allegation that a nebulous "policy" summarized in a press release and referenced by the parole violation hearing examiner resulted in some un-quantified disadvantage to him. But to state an ex post facto claim, Petitioner must show that the policy creates "a significant risk of increasing punishment for a crime beyond that prescribed when the crime was committed." *McGruder v.*

---

[4] The only other reference to the policy in the record is a footnote citation in the Report and Recommendation that references a press release summarizing the policy. (*See* Report and Recommendation, docket # 10, at 14.) The press release merely repeats Governor Granholm's position on a variety of parole-related issues; it does not by its own terms limit the statutory grant of discretion afforded the parole board under Michigan law, nor does it conclusively mandate that discretion be exercised in a particular fashion.

*Renico*, 58 Fed. Appx. 111, 112 (6th Cir. 2003) (citing *Garner*, 529 U.S. at 255-56). The Zero Gun Tolerance Policy does not evidence such a risk on its face, and there is no indication that practical application of that policy to parolees in Petitioner's position results in a significant risk of periods of incarceration longer than the periods reasonably contemplated by the normal exercise of the Parole Board's discretion as the Board adapts based on experience. *Cf. Garner*, 529 U.S. at 255. Petitioner has been released on parole three times. He has violated parole three times. His continuance was well within the authorized term under Michigan law. At best, his ex post facto claim can be read to allege that the Michigan Parole Board, at Governor Granholm's direction, has toughened its stance on parolees who possess a weapon in violation of their parole. But as Justice Scalia noted in his *Garner* concurrence, "[d]iscretion to be compassionate or harsh is inherent in the sentencing [and parole] scheme, and being denied compassion is one of the risks that the offender knowingly assumes." 529 U.S. at 258. Consequently, Petitioner cannot state a claim under the Ex Post Facto Clause. *See id.*; *Cf. McGruder*, 58 Fed. Appx. at 112 (holding that the Michigan Parole Board's decision to lengthen the period of time between parole hearings did not violate the Ex Post Facto Clause).

## IV.    Certificate of Appealability

Before Petitioner may appeal the Court's dismissal of his petition, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b)(1). The Federal Rules of Appellate Procedure extend to district judges the authority to issue certificates of appealability. FED. R. APP. P. 22(b); *see also Castro v. United States*, 310 F.3d 900, 901-02 (6th Cir. 2002). Thus the Court must either issue a certificate of appealability indicating which issues satisfy the required

showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); FED. R. APP. P. 22(b)(1); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the required "substantial showing," the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Petitioner has not made the required "substantial showing" in this case. Reasonable jurists could not debate the outcome of any of Petitioner's claims, and therefore Petitioner should not be allowed to proceed further. *See id.*

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge, filed on October 29, 2008, is approved and adopted as the opinion of the court as further supplemented or modified by this Order.

**IT IS FURTHER ORDERED** that:

1. Petitioner's petition for a writ of habeas corpus is summarily **DISMISSED** for failure to raise a meritorious federal claim; and

2. A certificate of appealability is **DENIED**.

Dated:     June 1, 2009          /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 UNITED STATES DISTRICT JUDGE